UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

DuWayne Allen Bohner,

   Plaintiff,

v.

LHR, Inc. et al,

   Defendant,

Civ. No. 10-4621 (DWF/LIB)

**REPORT AND RECOMMENDATION**

---

   This matter came before the undersigned United States Magistrate Judge upon Defendants' Motion for Summary Judgment. The motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' motion be granted.

**I. BACKGROUND**

   DuWayne Bohner (Plaintiff) filed this suit alleging that LHR Inc. (LHR) and Bank of America (Defendants) violated the Fair Debt Collection Practices Act (FDCPA) and Fair Credit Reporting Act (FCRA). (Compl. [Docket No. 1] ¶¶ 20-35). Plaintiff discovered in his credit report an outstanding debt that was originated by Bank of America, which was eventually sold to LHR. (Id. ¶¶ 8-9). Plaintiff contacted Defendants and demanded proof of the alleged account, which he alleges was never provided. (Id. ¶¶ 10-14). Plaintiff asserts that the allegedly false information that he owes money on the account continues to be reported on his credit card reports. (Id. ¶ 16).

   On August 8, 2011, upon Defendant Bank of America's motion to dismiss, the undersigned issued a Report and Recommendation recommending that Plaintiff's FDCPA claim

against Defendant Bank of America be dismissed because Plaintiff failed to allege any facts that would permit the Court to find that Bank of America was a "debt collector" as defined by 15 U.S.C. § 1692a. (See Report and Recommendation [Docket No. 42] at 8). The undersigned also recommended that Plaintiff's claim against Defendant Bank of America based on Minn. Stat. § 332.37 be dismissed for the same reason. (Id. at 9). The Honorable Donovan W. Frank adopted the Report and Recommendation in its entirety on September 24, 2011. (See Order [Docket No. 46] at 2).

After the Court's dismissal of the FDCPA and § 332.37 claims against Defendant Bank of America, Plaintiff's remaining claims are that: 1) Defendant LHR violated the FDCPA; 2) Defendant LHR violated Minn. Stat. § 332.37; and 3) Defendants violated the Fair Credit Reporting Act. (Compl. [Docket No. 1] ¶¶ 20-35).

On June 7, 2012, Defendants filed their motion for summary judgment presently before the Court. (See Docket No. 66). Plaintiff did not file a response to the motion until August 7, 2012, (see Docket No. 103) which was outside of the timeline permitted by Local Rule 7.1. In his response, Plaintiff provided that he suffers from a history of disabilities and physical limitations and that they were the reason for the delay in responding. (Pl.'s Br. in Opp'n [Docket No. 103] at 1). Although it would be within this Court's discretion to strike Plaintiff's response as untimely, because Plaintiff represented that he failed to file a timely response because of his health related issue and did not deliberately delay, the Court will consider Plaintiff's filing. In so doing, the Court notes that Defendants will suffer no prejudice as they were each given an opportunity (and each filed) a response to Plaintiff's filing. (See Docket Nos. 105 and 108).

## II. STANDARD OF REVIEW

Summary Judgment is appropriate only when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the nonmoving party may not rest on mere allegations or denials in its pleadings, but must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## III. DISCUSSION

Defendants argue that Defendants are entitled to summary judgment because on the facts in the record before the Court all of Plaintiff's remaining claims fail as a matter of law. (Defs.' Mem. of Law in Supp. of Their Mot. for Summ. J. [Docket No. 90] at 1).

Each of Plaintiff's claims is discussed below.

### A. Plaintiff's claim that Defendant LHR violated the FDCPA

In this claim, reading Plaintiff's Complaint liberally as the court must, Plaintiff alleges that Defendant LHR violated 15 U.S.C. § 1692c, 1692e, and 1692g.

15 U.S.C. § 1692c(c) provides that once

a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except" in three limited circumstances:

(1) to advise the consumer that the debt collector's further efforts are being terminated;
(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

In his Complaint, Plaintiff alleged that he sent a letter to LHR on May 25, 2008 advising it that he no longer wished to be contacted. (Compl. ¶ 26). However, Plaintiff has failed to introduce any evidence into the record demonstrating he sent a letter to LHR on May 25, 2008. Indeed, on the present record before the Court, the only letter Plaintiff appears to have sent to LHR was on January 8, 2010. (Aff. of Susan Crandall [Docket No. 92] ¶ 12, Ex. G). In his deposition, Plaintiff admitted that January 8, 2010 was the first time he tried to contact LHR. (Bohner Dep. 63:9-64:3, May 14, 2012 [Docket No. 76, Ex. 3 at 15]). In that letter, Plaintiff stated that he longer wished to be contacted by phone and that if Defendant LHR wished to

4

communicate with him, it would have to do so by U.S. Mail. There is no evidence in the record that Defendant LHR at any time after January 8, 2010 contacted Plaintiff by telephone. Indeed, Plaintiff testified that LHR had never attempted to contact him by telephone at all. (Bohner Dep. 62:18-20). In fact, Plaintiff stated in his deposition that he did not receive any telephone calls from LHR after he mailed his letter, nor did he receive any other communications in writing from LHR before receiving the letter in October of 2010 purporting to be a validation of the debt disputed by Plaintiff. (Bohner Dep. 71:2-8).

Therefore, Plaintiff has failed to present any facts to support his claim that Defendant LHR violated 15 U.S.C. § 1692c.

With respect to 15 U.S.C. § 1692e, Plaintiff alleged that Defendant used false, deceptive, or misleading representations or means in connection with the collection of a debt. (Compl. ¶ 27). Although Plaintiff appears to base his claim on subsection 5, which states that the debt collector may not make a "threat to take any action that cannot legally be taken or that is not intended to be taken,"[1] Plaintiff fails to provide any factual allegations as to what representations were made that were false, deceptive, or misleading or what means Defendant employed in connection with collecting the underlying debt that fell within the category of false, deceptive, or misleading. (Id.)

As such, the Court finds that there are no facts in the record to demonstrate that Defendant LHR used false, deceptive, or misleading information in violation of 15 U.S.C. § 1692e.

With respect to 15 U.S.C. § 1692g, Plaintiff makes several allegations in the Complaint. Plaintiff alleges that Defendant "fail[ed] to provide the consumer with the proper validation

---

[1] 15 U.S.C. § 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." "The threat to take any action that cannot legally be taken or that is not intended to be taken" is a violation of § 1692e. 15 U.S.C. § 1692e(5).

5

notice within five days of the initial communication." (Compl. ¶ 29). The subsection upon which Plaintiff appears to be basing his claim provides that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

On January 3, 2007, Defendant LHR sent Plaintiff a letter notifying him that the account had been assigned to LHR and informing him that he had a right to dispute the debt or request validation of the debt within 30 days of receiving the letter. (Aff. of Susan Crandall [Docket No. 92] ¶ 6, Ex. A). There is no dispute that Plaintiff received the required notice—Plaintiff admits that he received this letter on or about January 3, 2007. (Bohner Dep. 55:8-14, May 14, 2012 [Docket No. 76, Ex. 3 at 15]). Additionally, Plaintiff does not appear to allege any deficiency with the notice. Indeed, on its face, the January 3, 2007 letter appears to include all five categories of information required by 15 U.S.C. § 1692g(a): the amount of the debt owed, the name of the creditor to whom it is owed (LHR), that if Plaintiff did not dispute the debt within 30

days it would be assumed valid, that if notified within 30 days of the letter Defendant would obtain verification of the debt, and that Defendant would provide Plaintiff with the name and address of the original creditor if Plaintiff made such a request within 30 days. (Aff. of Susan Crandall [Docket No. 92] ¶ 6, Ex. A); (Decl. of Margaret R. Ryan [Docket No. 91], Ex. 1 at 78).

Thus, Plaintiff has failed to present any facts to show Defendant LHR violated 15 U.S.C. § 1692g(a).

Plaintiff's only other allegation regarding 15 U.S.C. § 1692g states that "Defendants violated this section of the FDCPA," pertaining to Plaintiff's "rights to dispute the alleged debt." (Compl. ¶ 28). Plaintiff, however, fails to allege how Defendant violated his right to dispute the debt. 15 U.S.C. § 1692g(b), the subsection relevant to the dispute of a debt provides that:

> [i]f the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

Defendant LHR asserts that it has entirely complied with the requirements of this subsection. (Def.'s Mem. of Law in Supp. of Their Mot. for Summ. J. at 10).

As already explained above, Defendant LHR provided the initial notice regarding Plaintiff's consumer's rights, as required under 15 U.S.C. § 1692g(a). Plaintiff admitted in his deposition that he received the letter on or about January 3, 2007. (Bohner Dep. 55:3-14, May 8,

7

2012 [Docket No. 76-3] at 15). He also testified that he read the letter when he received it. (Bohner Dep. 56:1-3). Plaintiff explained that he did not contact LHR when he received the letter because he had family issues. (Bohner Dep. 55:15-25). Furthermore, he testified that he did not contact LHR within 30 days of receiving the letter. (Bohner Dep. 56:14-16).

As provided in 15 U.S.C. § 1692g, and the specific language in the January 3, 2007 letter, Plaintiff had thirty days to notify Defendant, in writing, that any portion of the debt was in dispute, which would have required Defendant LHR to obtain and mail to Plaintiff a verification of the debt or a copy of a judgment against him. Plaintiff admitted that the first time he attempted to contact Defendant LHR was via his January 8, 2010 letter. (Bohner Dep. 63:9-64:3). There is no dispute that Plaintiff failed to contact Defendant LHR within thirty days of receiving the initial notice in January of 2007.

Once plaintiff failed to make the request within the 30-day period, Defendant was under no obligation to validate the debt. See Fasten v. Zager, 49 F. Supp.2d 144, 149 (E.D. N.Y. May 20, 1999) ("[S]ince plaintiff failed to request verification of the debt in writing, as expressly required by the validation notice and Section 1692g(4), defendant was under no legal obligation to provide verification of the debt."); Agu v. Rhea, 2010 WL 5186839, at *5 (E.D. N.Y. Dec. 15, 2010) ("Plaintiff's Section 1692g(b) claims fail because, although he alleges that he repeatedly requested that the Collection Defendants verify the questioned debts, he does *not* allege that he made any of these requests within the thirty day time window that Section 1692(b) provides."); Langley v. Chase Home Finance, LLC, 2011 WL 1150772, at *12 (W.D. Mich. Mar. 11, 2011) (finding that defendants were entitled to summary judgment because the plaintiff did not dispute that he failed to request validation within 30 days of receiving the initial notice); Crow v. Wolpoff & Abramson, No. 06-3228, 2007 WL 1247393, at *3 (D. Minn. Apr. 19, 2007)

(explaining, in the context of an affirmative defense, that "if indeed the facts do support defendant's assertion that plaintiff received the debt notice before May 24, 2006, the validation request was untimely per the FDCPA").

Therefore, the Court finds that there is no evidence in the record to show that Defendant LHR violated 15 U.S.C. § 1692g(b).[2]

For the reasons stated above, the Court finds that Defendant LHR is entitled to summary judgment on Plaintiff's claim that Defendant LHR violated the FDCPA.[3]

---

[2] The Court also notes that, even though it was under no obligation to do so, after receiving Plaintiff's January 8, 2010 letter disputing the debt, Defendant LHR contacted Bank of America to provide verification of the debt. In October of 2010, LHR received an unsigned, but notarized, affidavit from Bank of America providing the account number of the debt, the last four digits of the social security number associated with the account, and that the account had been opened by in Plaintiff's name. (Aff. of Susan Crandall [Docket No. 92] ¶¶ 15-18, Ex. H). The affidavit also stated that as of December 22, 2006, the amount due was $11,727.21 and provided that on December 22, 2006 the account had been "sold, transferred and set over unto LHR, with full authority to do and perform all acts necessary for collection, settlement, adjustment, compromise or satisfaction of the said claim." (Id., Ex. H). A copy of the affidavit was mailed to Plaintiff. (Id. ¶ 18).

The Eighth Circuit has previously explained that "[c]onsistent with the legislative history, verification is only intended to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." Dunham v. Portfolio Recovery Associates, LLC, 663 F.3d 997, 1003 (8th Cir. 2011) (internal quotation marks and alterations omitted). Nevertheless, because Defendant LHR was under no obligation to make any validation after Plaintiff failed to provide the timely request for validation, the Court need not decide whether the notice provided to Plaintiff was legally sufficient under the statute.

[3] Plaintiff's Complaint appeared to make several other allegations in passing. The Court briefly addresses these allegations.

First, Plaintiff appeared to assert that Defendants violated 15 U.S.C. § 1692(g) "by demanding payment without providing the proper consumer warnings." (Compl. ¶ 30) (citing Tychewicz v. Dobberstein, 1996 U.S. Dist. LEXIS 22555 (W.D. Wis. Aug. 29, 1996)). In Tychewicz, the Court held that even though the debt collector had provided a proper validation notice at one time, a subsequent letter from the debt collector overshadowed the first notice because it suggested that the plaintiff's time to dispute the debt had passed, even though four days remained. 1996 U.S. Dist. LEXIS 22555, at *8. Thus, the Court found that the defendant had violated § 1692(g), which entitled the plaintiff to an award of actual and statutory damages. Id. at 11. Here, however, Plaintiff has not alleged that Defendants sent a subsequent notice that overshadowed the initial validation notice; instead, he asserted that they never sent a validation notice. Thus, Plaintiff's reliance on Tychewicz is misplaced.

Second, Plaintiff appeared to assert that Defendants failed to provide notification to the consumer reporting agencies that Plaintiff's account was in dispute. (Compl. ¶ 15). The Affidavit of Ms. Crandall, however, provides that LHR did in fact provide such a notification to the consumer reporting agencies. (Aff. of Susan Crandall ¶ 14). Likewise, the account history from LHR also reflects that the account dispute was submitted to the consumer reporting agencies. (Supp. Decl. of Margaret R. Ryan [Docket No. 99], Ex. 1 at 3-4). Plaintiff has not cited to any admissible evidence to the contrary. Moreover, during his deposition, Plaintiff testified that he had no reason to believe, nor any facts to support, his claim that LHR did not notify the consumer reporting agencies that the amount owed under Plaintiff's account was in dispute. (Bohner Dep. 71:25-72:12). Thus, to the extent that Plaintiff continues to assert such a claim, Defendant LHR is entitled to summary judgment.

### B. Plaintiff's claim that Defendant LHR violated Minn. Stat. § 332.37(6)

Plaintiff claims that Defendant violated Minn. Stat. § 332.37(6), (Compl. ¶ 24), which provides that no collection agency or collector shall

> exercise authority on behalf of a creditor to employ the services of lawyers unless the creditor has specifically authorized the agency in writing to do so and the agency's course of conduct is at all times consistent with a true relationship of attorney and client between the lawyer and the creditor

Minn. Stat. § 332.37(6). Plaintiff failed to provide any factual allegations for why he believed Defendant LHR employed the services of lawyers improperly but, rather, appeared to argue that Defendant could not collect on the debt because they did not have a proper assignment of the claim. (Compl. ¶ 24).

Defendant LHR argues that after it purchased the debt from Defendant Bank of America, it became the creditor, and moreover, that it "never retained an attorney to collect this debt." (Def.'s Mem. of Law in Supp. of Their Mot. for Summ. J. at 13). Ms. Crandall attests to both these facts. (Aff. of Susan Crandall ¶ 26). Plaintiff has failed to present any evidence that Defendant LHR at any time hired an attorney to collect the debt on LHR's behalf. Furthermore, Plaintiff has not presented any evidence to dispute the facts presented by LHR that it was the actual creditor, not a collection agency, after it purchased the debt from Defendant Bank of America.[4]

---

[4] Defendant LHR provided a copy of the Account Sale Agreement as well as a redacted list of the purchased accounts that were included in the purchase by LHR. Furthermore, both Defendants provided admissible evidence that on December 21, 2006, the account at issue was sold and transferred to LHR with "full authority to do and perform all acts necessary for collection, settlement, adjustment, compromise or satisfaction of the said claim, and as of that date, there was due and payable on this Account the sum of $11,727.21." (Aff. of Debra L. Pellicciaro [Docket No. 94] ¶ 4); (Aff. of William Goble [Docket No. 92, Ex. 1 at 22] ¶¶ 6-7).

To the extent Plaintiff argues that the debt was not assignable as a matter of law, he first fails to explain how the FCRA gives him the opportunity to challenge the assignment. Such a claim appears to be more appropriately aimed at the FDCPA, a claim which was dismissed against Defendant Bank of America by the Court's prior Report and Recommendation. Nevertheless, to the extent that Plaintiff argues that credit card debt is not assignable as a matter of law, such a claim is entirely without merit, as this has been a practice long in effect. See Wilhelm v. Credico,

There is no evidence to suggest that Defendant LHR violated Minn. Stat. § 332.37(6) because it is undisputed that Defendant LHR was the owner of the debt—not an agency attempting to collect on a creditor's behalf—and never retained an attorney.

### C. Plaintiff's claim that Defendants LHR and Bank of America violated the FCRA

Reading Plaintiff's Complaint liberally, it appears that Plaintiff alleges that Defendant violated 15 U.S.C. § 1681s-2 of the Fair Credit Reporting Act (FCRA) in three ways: 1) Defendants failed to "inform the National Credit Reporting Agencies that the alleged account [was] in dispute and failed to do so for over two years"; 2) Defendants "[c]ontinually updat[ed] the Plaintiff's credit report for over two years with this erroneous and inaccurate information"; and 3) Defendants failed to validate the alleged account. (Compl. ¶¶ 18, 34).[5]

15 U.S.C. § 1681s-2(a)(2) provides that furnishers of information have a duty to provide notice of a dispute: "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not

---

Inc., 519 F.3d 416, 417 (8th Cir. 2008) (describing that the plaintiff's credit card debt had been assigned for collection).

[5] Plaintiff made reference to 15 U.S.C. § 1681b(a), (Compl. ¶ 33), which pertains to the permissible disclosure of consumer reports by a consumer reporting agency. Plaintiff has not alleged, nor demonstrated any facts to show, that either Defendant is a consumer reporting agency; thus, the reference to 15 U.S.C. § 1681b(a) does not provide a basis for a claim.

Plaintiff also alleged that "Defendants reviewed Plaintiff's credit report without proper authority or assignment of the alleged debt." (Compl. ¶ 35). He argues that Defendants have provided "[n]o permissible purpose to pull the reports." (Id.) Plaintiff's claim on this ground fails because 15 U.S.C. § 1681b(a)(3)(A) specifically provides that a consumer reporting agency may furnish a consumer report to a person which it has reason to believe intends to "use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the . . . collection of an account of[] the consumer." Although the statute does not explicitly state that obtaining a consumer report in collecting on an account is permissible, numerous courts have held that "[d]ebt collection is a permissible purpose for obtaining a consumer credit report under the FCRA." See, e.g., Robinson v. Greystone Alliance, LLC, 2011 WL 2601573, at *3 (D. Md. Jun. 29, 2011). In his deposition, Plaintiff stated that he did not allege that Defendants accessed his consumer report in any way other than trying to collect his debt. (Bohner Dep. 73:1-4). Therefore, to the extent that Plaintiff makes a claim that Defendants accesses his credit report for an impermissible purpose, Defendants are entitled to summary judgment.

furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer."

Plaintiff's claim under 15 U.S.C. § 1681s-2(a), to the extent he continues to make one, fails as a matter of law because "there is no private right of action against one who furnishes inaccurate information to a credit bureau in violation of Section 1681 s-2(a)" and "[t]he FCRA expressly provides that a violation of Section 1681 s-2(a) shall be enforced exclusively by the Federal agencies and officials and the State officials identified in section 1681s." Thulin v. EMC Mortg. Corp., No. 06-3514 (RHK/JSM), 2007 WL 3037353, at *6 (D. Minn. Oct. 16, 2007) (internal quotation marks and alterations omitted); Gordon v. Greenpoint Credit, 266 F. Supp.2d 1007, 1010 (S.D. Ia. 2003) ("The FCRA ... leav[es] enforcement of § 1681s-2(a) to the Federal and State agencies and officials identified in § 1681s."); Green v. First Premier Bank, 2011 WL 5837265, at *2 (D. S.D. Nov. 21, 2011).

With respect to Plaintiff's allegation that Defendants failed to validate the alleged debt, 15 U.S.C. § 1681s-2(b) provides that upon notice of a dispute from the credit, the person furnishing information has a duty to conduct an investigation, review all the relevant information provided by the consumer reporting agency, and report the results of the investigation to the consumer reporting agency. However, "[b]ecause a furnisher's obligation to conduct a reasonable investigation under § 1681s–2(b) arises when it receives a notice of dispute from a CRA, it need investigate only 'what it learned about the nature of the dispute from the description in the CRA's notice of dispute.'" Anderson v. EMC Mortg. Corp., 631 F.3d 905, 908 (8th Cir. 2011) (quoting Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009)). Furthermore, "[a] furnisher cannot be held liable under section 1681s–2(b) simply for failing to report that a debt is disputed." Green, 2011 WL 5837265 at *3. Rather, it may

12

only be held liable "if the omission is 'misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" Id. (quoting Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1163 (9th Cir. 2009)). In Green, the court found that the claim failed because the plaintiff failed to demonstrate, or even allege, that he had paid the debt or that he was not the individual responsible for the debt. Id. at *3.

During his deposition, Mr. Bohner acknowledged that he had received bills with the account number at issue and that he had a Bank of America credit card. (Bohner Dep. 20:1-25:18). He also admitted that as of December 22, 2006 he owed Bank of America $11,727.21. (Id. 24:3-25:18). Thus, despite his allegation in the Complaint to the contrary, Mr. Bohner does not now appear to dispute that he owned the account number at issue, nor has presented any evidence to suggest that he did not own the account, and he has presented no evidence that he paid the amount due on the account.

Even without Plaintiff's admission, Defendants would be entitled to summary judgment because Plaintiff has failed to present any evidence to show that Defendants failed to conduct a reasonable investigation, as required by 15 U.S.C. § 1681s-2(b)(1). To the contrary, the evidence in the record demonstrates that Defendants complied with 15 U.S.C. § 1681s-2(b)(1).

When the notice of dispute from the consumer reporting agency provides only vague or cursory information about a consumer's dispute, an investigation by the defendant into "the information it received from the seller of the debt to verify that [the plaintiff] was the one who owed [the debt] and how much he owed" was sufficient. Edeh v. Midland Credit Mgmt., Inc., 413 Fed. Appx. 925, 926-27 (8th Cir. 2011).

Here, the information LHR received from the consumer reporting agencies was that an individual by the name of DuWayne Allen Bohner, with an address of 2559 230th Street,

13

Rothsay, Minnesota, with a specific social security number had disputed the debt claiming that it was "not his." (Aff. of George E. Driver IV [Docket No. 93], Ex. 1 at 59); (Aff. of Susan Crandall [Docket No. 92] ¶ 21). Defendants confirmed that the identifying information Plaintiff had provided to the consumer reporting agencies, including his name, address, and social security number, matched the information in the records relating to the account at issue. (Aff. of George E. Driver ¶ 11); (Aff. of Susan Crandall ¶ 22). LHR also confirmed that "there was no other information in its files such as letters having been returned which had been sent to the address in question," and ensured that it had no "information obtained from the consumer which would indicate that LHR had either reported the debt on the wrong consumer's credit report, or that the consumer had been subject of identity theft." (Aff. of Susan Crandall ¶ 23). Likewise, Bank of America confirmed that it had "no information which would indicate that Mr. Bohner had been subject to identity theft, or that BOA had otherwise reported this account on a different consumer's credit report with the same or a similar name as 'DuWayne Bohner.'" (Aff. of George E. Driver ¶ 12). Additionally, a letter sent to Plaintiff by one of the consumer reporting agencies appears to confirm that an investigation had been performed and the account had been validated. (Decl. of Margaret Ryan, Ex. 1 at 60-61).

Plaintiff has failed to present evidence to show that he disputed any issue other than the ownership of the account, nor has he presented any evidence to create a genuine issue of material fact that Defendants' investigation failed to comply with 15 U.S.C. § 1681s-2(b). As such, Defendants are entitled to summary judgment on this claim.

### IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In his response to Defendants' motion, Plaintiff appeared to assert several new theories of liability against Defendants.

"A memorandum is not the appropriate place to attempt to amend a pleading to raise a new claim." Nelson v. Bank of New York Mellon, No. 12-1096, 2012 WL 4511165, at *4 n.2 (D. Minn. Oct. 1, 2012). To the extent Plaintiff appears to raise new claims in his memorandum in opposition to Defendants' motion for summary judgment, they are not properly before the Court and the Court need not consider them. However, even if the Court were to consider them, Plaintiff's claims would fail.

In his memorandum in opposition, Plaintiff first argued that because a letter he mailed to Bank of America was returned as undeliverable, Defendant Bank of America violated its duty under 15 U.S.C. § 1681s-2 to provide accurate information to a consumer reporting agency. (Pl.'s Br. in Opp'n [Docket No. 103] at 2). 15 U.S.C. § 1681s-2(b)(1) requires an investigation into inaccurate information once the person furnishing the information receives a notice from the consumer reporting agency. Here, Plaintiff has not alleged that he submitted the issue of an inaccurate address to the consumer reporting agency.

Second, Plaintiff argued that the charged off amount listed for a Bank of America account by Equifax reports to be $4,834 while the amount by Experian reports to be $6,483. (Pl.'s Br. in Opp'n at 2). As Defendants correctly argue, the only dispute reported by the consumer reporting agencies was that Plaintiff claimed the account was not his—not that the amount was incorrect. A creditor cannot be held liable for reporting inaccurate information where the creditor never received notice from the consumer reporting agency that the plaintiff disputed the reported information. See Thulin, 2007 WL 3037353, at *6 (D. Minn. Oct. 16, 2007).

Third, Plaintiff argued that the credit card contract was subject to Article 3 of the UCC and was non-transferable. (Pl.'s Br. in Opp'n at 2). As already explained by above, there is no

15

real dispute that Plaintiff's credit card debt was properly assigned to Defendant LHR. Furthermore, to the extent that Plaintiff argues that Defendant LHR violated the FDCPA by attempting to collect on a debt that was not assignable, such a claim would be barred by the one-year statute of limitations that began running in 2007 when Plaintiff received the letters from LHR informing him that the debt had been assigned. See James v. Ford Motor Credit Co., 47 F.3d 961, 963 (8th Cir. 1995) ("FDCPA actions must be brought within one year of the date on which the alleged statutory violation occurred.").

Finally, Plaintiff stated in his memorandum in opposition to Defendants' motion that he moved the court for summary judgment against Defendant Bank of America. (Pl.'s Br. in Opp'n at 4). He argued that George E. Driver IV, an employee of Bank of America, admitted that Bank of America did not conduct an investigation to verify the debt. (Id.) Although the Court could outright deny Plaintiff's motion because it has not been filed in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules,[6] a review of the testimony cited by Plaintiff demonstrates that Mr. Driver did not admit that Defendant Bank of America failed to perform an investigation but instead provided that in 2010, because the debt had been sold, Bank of America would have been under no duty **under the FDCPA** to provide validation of the debt, as it was no longer attempting to collect on the debt. Because the Court already dismissed Plaintiff's FDCPA claim against Defendant Bank of America, even if the Court were to consider Plaintiff's motion for summary judgment, it would fail.[7]

---

[6] The Court notes that in previously striking two motions to compel filed by Plaintiff without obtaining a hearing date, the Court advised Plaintiff that he will not be excused from following the procedural rules merely because he is a pro se party. (Order [Docket No. 64] at 1).

[7] On the day of the hearing on Defendants' motion for summary judgment, Plaintiff filed a "Supplement to Opposition to Defendants' LHR, Inc. and BOA Motion for Summary Judgment/Plaintiff's Motion for Summary Judgment Against LHR Inc." (See Docket No. 113). Because the filing was not in compliance with Local Rule 7.1, the Court need not consider any of the arguments or claims made within. However, once again, even if the Court were to consider Plaintiff's filing, it would have no merit.

16

## V. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) Defendants' Motion for Summary Judgment [Docket No. 66] be **GRANTED** as more fully described above;

2) Judgment be entered accordingly.


Dated: December 10, 2012
s/Leo I. Brisbois
LEO I. BRISBOIS
United States Magistrate Judge

### N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by December 24, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.

---

In the filing, Plaintiff raised two issues: 1) he argued that the debt sold to LHR was "worthless commercial paper" and not assignable; and 2) he attempted to bring a motion to amend the complaint.  The Court has already rejected Plaintiff's argument that the debt was not assignable and need not address it again.  As to Plaintiff's motion to amend the complaint, in addition to not being a properly filed motion with the necessary record for the Court to consider the motion, at this stage in the litigation, even if a proper motion to amend the complaint had been filed, the Court would deny it.